IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

v.    Criminal Case NO. 13-50047-001

JUAN ARAIZA-CARRILLO                                        DEFENDANT

## O R D E R

Now on this 6th day of August, 2013, come on for consideration defendant's **Motion To Suppress** (document #18); the **Magistrate Judge's Report and Recommendation** ("R&R") (document #22); and **Defendant's Objections To Magistrate Judge's Report And Recommendation** (document #23), and from said documents, the Court finds and orders as follows:

1.    Defendant Juan Araiza-Carrillo is charged in a five-count Indictment with offenses related to the possession, manufacture, transfer, and use of false identification documents, and devices for making such documents.

The charges grew out of an incident that occurred around 5:30 p.m. on January 21, 2013, when Officer Cody Ross with the Springdale Police Department stopped a car being driven by a white female, Amy Hernandez, in which Araiza-Carrillo was a passenger.

2.    The sequence of events, as testified to by Officer Ross, is as follows.  Officer Ross first noticed the car at an address on Caudle Street that he had been keeping under observation because it was in a high crime area and he suspected it as being

a locus of gang activity.  A woman passenger was sitting in the front seat.  Officer Ross saw Araiza-Carrillo come out of the Caudle Street house, and testified that he acted like a "deer in the headlights" when he saw the patrol car, hesitating and vacillating between going back inside or getting into the car.

Araiza-Carrillo got into the car and drove away.  Officer Ross followed.  He ran the license plate, and his dispatcher radioed that the car was registered to an  "Ariana Francisco" or "Ariela Francisco" -- there was difficulty with pronouncing or understanding the first name.

Officer Ross testified that Araizo-Carrillo drove only a very short distance, then made a sudden turn (putting on his turn signal only as he turned) into a nearby apartment complex. Officer Ross passed on by, turned around, and came back, just in time to see the car leave the apartment complex, this time with the woman  driving and Araizo-Carrillo in the passenger seat.

Officer Ross stopped the car, advised the occupants of the reason for the stop, and asked for their identification. Hernandez gave him her driver's license, and told Officer Ross that she was driving because her passenger did not have a license. Araizo-Carrillo furnished an identification card that identified him as Juan Francisco Carillo.

Officer Ross asked Hernandez to step out of the car, and a discussion followed.  When asked if she had anything illegal,

Hernandez told Officer Ross she had a methamphetamine pipe in her purse.  Officer Ross then asked Hernandez for consent to search the car, and she gave her consent.

Officer Ross' backup officer directed Araiza-Carrillo to get out of the car.  Officer Ross asked for consent to search him, and he agreed.  A substance suspected to be methamphetamine was found wrapped in paper in Araiza-Carrillo's pocket, and on the basis of this, Araiza-Carillo was arrested and placed in the patrol car.  Officer Ross then searched the car and Hernandez' purse, finding a suspected false social security card in a soda bottle in the console of the car and the aforementioned meth pipe in the purse.

Hernandez was arrested, and eventually gave a statement that led to a search warrant for Araiza-Carrillo's apartment, where items were found upon which the Indictment is based.

3.   Araiza-Carrillo moves to suppress evidence seized during the search of the car and evidence seized with the warrant obtained as an indirect result of the car search.  He contends that the stop of the car was not supported by probable cause or reasonable suspicion, and that Hernandez did not have authority to consent to a search of the vehicle.

4.   The motion was referred to Magistrate Judge Erin L. Setser, who conducted an evidentiary hearing and issued the R&R now under consideration.

Magistrate Judge Setser reported that there was probable

cause for a traffic stop because Araiza-Carrillo -- who was driving the vehicle when Officer Ross initially noticed it -- made a left turn without giving a signal the required distance before turning.

Magistrate Judge Setser also reported that there was reasonable suspicion to support an investigatory stop because Araiza-Carrillo was acting suspiciously in a known high-crime area and at a location tied to gang activity.

Finally, Magistrate Judge Setser reported that Hernandez, who was driving the car at the time of the stop, consented to the search of the car, and that Araiza-Carrillo did not object, thus removing any taint of illegality that might have contaminated the search.

On the basis of the foregoing conclusions, Magistrate Judge Setser recommended that the Motion To Suppress be denied.

5.   Araiza-Carrillo objects that there was no probable cause for a traffic stop because Officer Ross testified that he did not stop the car for failing to signal and because Araiza-Carrillo was no longer driving the car when it was actually stopped.

The Court need not address this objection, because a traffic stop is not implicated here.  The undisputed evidence is that Officer Ross did not conduct a traffic stop, but rather an investigatory stop, also known as a **Terry** stop.  This objection is, therefore, moot, and will be overruled.

6.   Araiza-Carillo objects that Officer Ross did not have reasonable suspicion to make a **Terry** stop, based on Officer Ross' testimony that he did not have an articulable basis to make the stop, but was simply stopping all vehicles leaving a certain address where he suspected gang activity.

The Court has reviewed the recorded testimony at the evidentiary hearing, and finds that more was involved.  Officer Ross testified that he initially *followed* the car simply because he was trying to gain information about the occupants of the Caudle Street house, but that he eventually *stopped* the car because he had observed what he considered to be suspicious activity.  This included:

*    the Caudle Street house was in a high-crime section of town, and was under surveillance for suspected gang activity;

*    when Araiza-Carillo saw the patrol car upon leaving the Caudle Street house, he had a "deer in the headlights" look and a noticeable hesitation about whether to go back inside the house or get in the car and drive away;

*    Hernandez had a similar "deer in the headlights" look on her face when she saw the patrol car;

*    both occupants of the car were constantly turning to look behind them as the patrol car followed them;

*    shortly after leaving the Caudle Street house, Araiza-Carillo made a sudden turn off the street into a nearby apartment

-5-

complex -- giving a turn signal only at the last minute -- as though trying to evade the patrol car;

* the car stayed at the apartment complex only until Officer Ross was apparently gone, then pulled back onto the road;

* while at the apartment complex, Araiza-Carillo had moved to the passenger seat and Hernandez was driving when the car got back on the road

While none of these activities standing alone would generate reasonable suspicion, the combination -- in Officer Ross' mind -- did generate such suspicion. At the time of this stop, Officer Ross had several years' experience with the Springdale Police Department Crime Suppression Unit, and he testified that the combination of the foregoing circumstances was suggestive of criminal activity.

7. A **Terry** stop is justified by the existence of "reasonable and articulable suspicion of criminal activity," which is determined not by evaluation of isolated incidents, but on the totality of the circumstances. As explained by the Supreme Court,

> [t]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause. . . .

**U.S. v. Arvizu**, **534 U.S. 266, 273-74 (2002)** (internal citations and quotation marks omitted).

-6-

Moreover, the fact that each of the factors relied upon by
Officer Ross, taken alone, is consistent with innocent activity,
is not dispositive.

> Even where each factor cited by law enforcement to
> support a seizure is not by itself proof of any illegal
> conduct and is quite consistent with innocent activity,
> the sum of the factors taken together can amount to
> reasonable suspicion.  That any one factor, viewed in
> isolation from the others, is by itself readily
> susceptible to an innocent explanation does not justify
> giving that factor no weight in the analysis.  This sort
> of divide-and-conquer analysis has been expressly
> rejected by the Supreme Court.

**U.S. v. Huerta**, **655 F.3d 806, 809 (8th Cir. 2011)** (internal
citations and quotation marks omitted).

8.   The Court finds Officer Ross' explanation of the basis
for the investigatory stop both credible and sufficient. It is
reasonable that a person who acts nervous and furtive when seen by
a police officer leaving a high crime area, then takes what may be
considered evasive action to lose a following patrol car and
switches drivers before getting quickly back on the road, would
arouse the suspicion of a trained police officer that criminal
activity might be planned or on-going.

For these reasons, this objection is without merit, and will
be overruled.

9.   Finally, Araiza-Carillo objects to the Magistrate
Judge's conclusion that he could have made some form of objection
to the search of the car.  Araiza-Carillo contends that he does
not speak English, and that even if he did, Hernandez was asked to

consent to the search while she was outside the car and Araiza-Carrillo was inside, unable to hear.  In addition, he points out that the search was conducted after he had been handcuffed and placed in the patrol car, where he could not get Officer Ross' attention.

This objection may have factual merit, but it lacks legal merit.  Hernandez, as driver of the car, had authority to consent to its search.  **U.S. v. Eldridge**, **984 F.2d 943,948 (8th Cir. 1993).**  While it may be that Araizo-Carrillo would have objected to the search if he had known it was requested, that would present a different legal issue than the one now before the Court.  There is no suggestion that Officer Ross knew that Araiza-Carrillo was the owner of the car, or that he separated Hernandez and Araiza-Carrillo for the purpose of obtaining consent from the driver without knowledge of the owner/passenger.[1]

Because Hernandez had authority to consent to the search, this objection is overruled.

**IT IS THEREFORE ORDERED** that the **Magistrate Judge's Report and Recommendation** (document #22) is **adopted,** and **Defendant's Objections To Magistrate Judge's Report And Recommendation**

---

[1] Officer Ross had information from dispatch that the car was registered to "Ariana Francisco" or "Ariela Francisco," which he thought to be a female name. The identification Officer Ross obtained from Araiza-Carrillo identified him as "Juan Francisco Carrillo," which is not sufficiently similar to Ariana Francisco, Ariela Franciso, Araiza Francisco, or even Francisco Ariaza (the name in which the vehicle was actually registered) to have put Officer Ross on notice that Araiza-Carrillo might have been the owner of the car.

(document #23) are **overruled.**

   **IT IS FURTHER ORDERED** that defendant's **Motion To Suppress**
(document #18) is **denied.**

   **IT IS SO ORDERED.**

                         **/s/ Jimm Larry Hendren**
                         **JIMM LARRY HENDREN**
                         **UNITED STATES DISTRICT JUDGE**